DENNIS R. INGOLS, ESQ., CSB#236458
LAW OFFICE OF DENNIS R. INGOLS
111 North Market Street, Suite #300
San José, California 95113
T: 408-601-0126
dennis@ingolslaw.com

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO LOPEZ, LORA LOPEZ, Individually, and LORA LOPEZ as Guardian Ad Litem for S.L., <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF SANTA CLARA, ROBERT RUIZ, EPIFANIO REYNA, ANGEL KELLY, BEVERLY JARVIS, RACHEL KING, and DOES 1-10, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (43 U.S.C. § 1983), INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, FALSE IMPRISONMENT,** <br><br> **JURY TRIAL DEMANDED** |

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

1

Plaintiffs, FRANCISCO LOPEZ, LORA LOPEZ, and Minor Plaintiff S.L., by and through her Guardian Ad Litem LORA LOPEZ ("Plaintiffs"), respectfully represent and allege as follows:

## I.    JURISDICTION & VENUE

1.      Plaintiffs bring this civil rights lawsuit pursuant to 42 U.S.C. §1983 to redress the deprivation by Defendants, at all times herein acting under color of state law, of rights secured to Plaintiffs under the United States Constitution, including the First, Fourth, and Fourteenth Amendments, under federal law, and California law where applicable as stated herein.

2.      This Court has jurisdiction over all causes of action asserted herein because all causes of action arise out of conduct undertaken by Defendants in the State of California, County of Santa Clara.

3.      Venue properly lies in the U.S. District Court for the Northern District of California in that the events and circumstances herein alleged occurred in the County of Santa Clara, and at least one Defendant resides in the County of Santa Clara.

4.      Plaintiffs have complied and/or substantially complied with the State of California's tort claim notice procedures pursuant to California Government Code 910, *et seq.*, and allege that all claims contained herein based on California state law are properly included in compliance with the laws of the State of California.

5.      Plaintiffs allege that their initial and timely compliance with said tort claim statutes occurred on March 3, 2020, by mailing on that date of the Claim Against the County of Santa Clara form designated by Defendant COUNTY OF SANTA CLARA (hereinafter "COUNTY Claim Form") for such claims to the address listed on same.

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.
2

6. Plaintiffs' claims, as set forth in the COUNTY Claim Form, including any attachments thereto, was rejected in writing on April 17, 2020.

## II. PARTIES

**PLAINTIFFS**

7. Plaintiff, PLAINTIFF FRANCISCO LOPEZ, ("Plaintiff" and/or "Father") was at all times relevant to the facts and circumstances herein an individual residing in the County of SANTA CLARA.

8. Plaintiff, PLAINTIFF LORA LOPEZ, ("Plaintiff" and/or "Mother") was at all times relevant to the facts and circumstances herein an individual residing in the County of SANTA CLARA.

9. Plaintiffs are the natural and biological parents of minor child, S.L. (born December 2015).  When referred to individually herein, they will be addressed as Father and Mother or Plaintiffs.

10. Plaintiff S.L. is a female minor under the age of 18, and will be referred to at times herein as Minor Plaintiff, or S.L., as circumstances dictate.

11. Prior to the involvement of the County of Santa Clara Department of Children & Family Services ("DFCS"), commonly referred to as Child Protective Services or "CPS," (hereinafter, "CPS"), and the individual Defendants named herein below in the lives of the Plaintiffs, they enjoyed all of the love, mutual affection, and support of a parent – child relationship, in an intact family unit.

12. An application for appointment of a Guardian Ad Litem to represent S.L. in this matter is or will be made at or near the time of filing of the Complaint in this action.

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

3

13.    The minor child's name is reduced to initials in these pleadings in order to protect the child's privacy. Plaintiffs intend to use this designation unless and until such time the Court orders otherwise.

14.    At all times relevant herein, prior to the removal of the child from Plaintiffs' care by Defendants, Plaintiffs raised, nurtured, provided guidance, and cared for the child.

15.    At all times prior to the wrongful removal and continued detention of the child by Defendants, Plaintiffs enjoyed the company, companionship, and society of S.L., and all other benefits of their rights of familial association with the child, and the child with them.

**DEFENDANTS**

**DEFENDANT COUNTY OF SANTA CLARA**

16.  Defendant COUNTY OF SANTA CLARA ("COUNTY") is a municipality in corporate form, organized and existing under the laws of the State of California. The Department of Family and Children's Services ("CPS") is a COUNTY governmental agency organized and existing pursuant to the law and policies of Defendant COUNTY, which together with COUNTY, promulgated, encouraged, and/or permitted, the policies, patterns, and practices under which the individual Defendants, and Does 1 – 20, committed the acts or omissions complained of herein, and of which policies, practices, customs, and/or procedures, and/or failure to train, whether or not promulgated in written form, encouraged, or allowed to persist by Defendant COUNTY. COUNTY condoned, ratified, and ignored without remediation the conduct of the social worker Defendants pursuant to said policies, practices, customs, and procedures, as complained of herein.

17.    As the employer of social workers and their supervisors, COUNTY and/or CPS had primary responsibility for the training, education, and supervision of social workers,

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.
4

emergency response workers, dependency intake workers, placement workers, and all other CPS personnel, and CPS supervisors.

**INDIVIDUAL DEFENDANT COUNTY EMPLOYEES**

**Defendant ROBERT RUIZ**

18.    Defendant ROBERT RUIZ, ("RUIZ") whose acts as alleged herein were performed in an individual capacity or as an employee of COUNTY and under color of state law, was an "emergency response" worker for CPS. RUIZ submitted the warrant application, which he signed and filed on September 6, 2019.

19.    RUIZ prepared and signed under oath the warrant application in this case. It was signed and filed on September 9, 2019. Therein, RUIZ knowingly, intentionally included false statements of fact, or made representations of fact with deliberate indifference to the truth or falsity of the factual representations, withheld or omitted various exculpatory or explanatory facts, and aimed to deprive Plaintiffs of their constitutionally protected rights. RUIZ was present for, and an integral participant in serving the warrant and removing S.L.

**Defendant ANGEL KELLY**

20.    Defendant ANGEL KELLY ("KELLY") whose acts as alleged herein were performed in an individual capacity or as an employee of COUNTY and under color of state law, was at all times material hereto, upon Plaintiff's information and belief, the supervisor of RUIZ and participated in the decisions, actions, and failures to act honestly and lawfully, as well as the lies, misrepresentations and failures to include mitigating and/or exculpatory evidence in presenting reports to the court.

21.    KELLY was RUIZ's direct supervisor charged with the responsibility to ensure that all of the information/evidence uncovered during the investigation was honestly and accurately

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

disclosed to the juvenile court in a timely manner, whether or not that information/evidence was helpful or harmful to the position taken by CPS.

22. KELLY did nothing to confirm or deny the contents of the reports, or to confirm whether it was thorough, truthful, and accurate. In fact, KELLY knew that they were not thorough, truthful, and accurate.

23. Despite knowing that the reports were not thorough, truthful and accurate, KELLY prepared and signed under oath the W&IC 300 Petition filed in conjunction with the warrant application; it was signed and filed on September 6, 2019.

**Defendant RACHEL KING**

24. Defendant RACHEL KING, ("KING") whose acts as alleged herein were performed in an individual capacity or as an employee of COUNTY and under color of state law, was an "emergency response" worker for CPS. KING was present for, and an integral participant in serving the warrant and removing S.L.

**Defendant EPIFANIO REYNA**

25. Defendant EPIFANIO "J.R." REYNA ("REYNA") whose acts as alleged herein were performed in an individual capacity or as an employee of COUNTY and under color of state law, was an "emergency response" worker for CPS.

26. REYNA prepared and signed under oath the "Initial Hearing Report," (also commonly called a "Detention Report"). It was signed on September 10, 2019, and filed either that day or the following day. In that report, REYNA knowingly, intentionally included false statements of fact, or made representations of fact with deliberate indifference to the truth or falsity of the factual representations, withheld or omitted various exculpatory or explanatory facts, and aimed to deprive Plaintiffs of their constitutionally protected rights.

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

6

**Defendant BEVERLY JARVIS**

27.    Defendant BEVERLY JARVIS ("JARVIS") whose acts as alleged herein were performed in her individual capacity or as an employee of COUNTY and under color of state law, was at all times material hereto, upon Plaintiffs' information and belief, the supervisor of REYNA and participated in the decisions, actions, and failures to act honestly and lawfully, as well as the lies, misrepresentations and failures to include mitigating and/or exculpatory evidence in presenting reports to the court.

28.    JARVIS was REYNA's direct supervisor charged with the responsibility to ensure that all of the information/evidence uncovered during the investigation was honestly and accurately disclosed to the juvenile court in a timely manner, whether or not that information/evidence was helpful or harmful to the position taken by CPS.

29.    JARVIS reviewed and approved REYNA's September 10, 2019, Initial Hearing Report and signed it to signify her approval before it was filed with the Juvenile Court.

30.    JARVIS did nothing to confirm or deny the contents of the report, or to confirm whether it was thorough, truthful, and accurate. In fact, JARVIS knew that they were not thorough, truthful, and accurate.

31.    Despite knowing that the reports were not thorough, truthful and accurate, KELLY prepared and signed under oath the Initial Hearing Report and other documents submitted to the juvenile court.

32.    When KELLY and/or JARVIS approved the aforementioned filings by RUIZ and REYNA they knew and understood, as did RUIZ and REYNA, that the reports and Petition allegations would be accepted into evidence by the juvenile court and that the court would rely on the contents of the reports and Petition(s) in coming to its decisions, yet KELLY and

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

7

JARVIS did nothing to confirm or deny the contents of the reports or the Petitions, thereby actively participating in committing fraud on the court in order to achieve the goal to violate the Plaintiffs' rights.

33.   ALL Defendants knew, based on COUNTY policy and training, that the juvenile court relies heavily upon their reports. Nevertheless, they knowingly, intentionally failed to be thorough, truthful and accurate in their submissions to the juvenile court.

**DOE DEFENDANTS**

34.   Plaintiffs are ignorant of the true names and capacities of those Defendants sued herein as DOES 1-10, inclusive, and therefore sues them by such fictitious names. Plaintiff will amend this Complaint to show the true names and capacities of said DOE Defendants when the same are ascertained and their roles in the actions/inactions, malfeasance/misfeasance, and conspiracy/ conspiracies alleged herein are known.

35.   Plaintiffs are informed and believe and, based upon such information and belief, allege that at all times herein mentioned, RUIZ, REYNA, KING, JARVIS, KELLY and Does 1-10, were each the agent of each other, and/or employees of their co-defendant COUNTY, and each of Defendants was acting within the scope, purpose, and authority of their employer, COUNTY, and with the knowledge, permission and consent of one or more of their co-defendants.

36.   Plaintiffs allege that the actions/inactions of the Defendant social workers, RUIZ, REYNA, KING, JARVIS, KELLY and Does 1-10 complained of, were at all or many times undertaken, or actions were not performed, within the scope and purpose of instituting or furthering a joint plan or conspiracy to violate the adult Plaintiffs' rights to familial

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

association with their child, and the Minor Plaintiff's rights to be free from an unlawful seizure, and to enjoy her familial association rights with her parents.

37.    This conspiracy included as its aim, violating the Plaintiffs' and Minor Plaintiff's constitutional rights to juvenile dependency court proceedings free from perjurious and misrepresented statements of fact by Defendants, included the routine withholding of exculpatory information from the Court and parties' respective counsel.

38.    Plaintiffs are informed and believe that the individual Defendants named herein, including the Doe Defendants participated in some manner in the events set forth in this Complaint, or failed to participate in some manner, which acts or failures to act were in some manner a proximate cause of the injuries complained of by Plaintiffs herein, and for which, whether by conspiracy to violate the Plaintiffs' rights, unlawful agreement, inadequate supervision, inadequate training, consent, ratification, or active participation, such Doe Defendants are responsible and/or liable for Plaintiffs' injuries and damages.

39.    Plaintiffs are informed and believe and, based upon such information and belief, allege that each of the individually named Defendants is responsible in some manner for the events, circumstances, happenings, errors, negligence, omissions, malfeasance, and related violation of the Plaintiffs' rights complained of herein and their conduct individually and/or collectively was the legal cause of injury and damages to Plaintiffs' alleged herein.

40.    Plaintiffs are informed and believe and, based upon such information and belief, allege that, at all times herein mentioned, each and every Defendant was the agent and/or employee of their co-defendants, and each of them, acting at all relevant times herein under color of the authority of a governmental entity and under, though often in contravention of, the statutes, ordinances, regulations, customs and usage of the State of California and/or the United States

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

9

Constitution and related laws implicated in the work performed by social service workers and the investigation of referrals containing allegations of child abuse and/or neglect.  The Defendants were acting under color of state law.

**MONELL CLAIMS**

41.     Plaintiffs contend that the policies, practices and procedures of CPS aforesaid and herein below, and the inadequacy of that training and failure to take any remedial steps led to a culture which routinely violates the constitutional rights of families snared in the juvenile dependency system in the County of Santa Clara. The policies, practices, customs that cause these violations are set forth below, and each is implicated in this case brought by Plaintiffs.

42.     Plaintiff hereby sues all agencies and departmental units of COUNTY specified hereinabove under the designation of COUNTY herein, and/or interchangeably with CPS.

**PETITIONS and WARRANTS**

43.     A juvenile dependency petition is a document sworn to under penalty of perjury, and contains elements of various grounds for alleging child abuse or neglect, all pursuant to W&IC Section 300.

44.     The Petition is then subjected to a *prima facie* standard at the initial Detention Hearing in juvenile court, whereby all the allegations are deemed true, the juvenile court can, and usually will, on that *prima-facie* standard then order children to continue to be separated from one or both parents, living in foster care, with non-relative extended family members, or with relatives.

45.     The COUNTY trains, and the social workers know, that the juvenile court is required to take their reports, such as the Initial Detention Hearing Reports, Addendum Reports, Last Minute Reports, and Jurisdiction/Disposition Reports, into evidence when making decisions

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

of any and all nature that arise in juvenile dependency proceedings, and that knowledge is abused by the repeated use of false statements – even completely fabricated evidence, misrepresentations, the repeated omission of facts or evidence known to the social worker, which if known to the Juvenile Court would materially change the juvenile court's decisions.

46.    COUNTY policy requires only including facts in support of the Petition. COUNTY policy also informs COUNTY employees, including Defendants, that the juvenile court relies on COUNTY employees ("the court's decision will be based more on the reading of the social worker's report than on any other factor"), yet COUNTY employees are not trained on the constitutional requirements that they be thorough, truthful, accurate, and that they provide the juvenile court exculpatory or explanatory information.

## FACTUAL ALLEGATIONS

**BACKGROUND**

47.    Plaintiffs FRANCISCO and LORA, got married on October 26, 2013, and lived together continuously thereafter as husband and wife. Upon the birth of S.L., they all resided together, as a family, continuously until September 6, 2019, when S.L. was removed from her parents' care, custody and control.

**S.L.'s Illness Begins**

48.    On August 16, S.L. had a low fever, but otherwise appeared fine, eating and playing as normal. Plaintiffs gave her Tylenol and the fever subsided.

49.    The next two days, S.L. had a slight fever again. Again, Plaintiffs treated with Tylenol, and the fever subsided. This persisted for another few days.

50.    On August 20, S.L. had no fever, but wanted a little more sleep than usual.

51.    During this period, S.L. showed no other symptoms, such as vomiting, diarrhea, or body

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.
11

aches. She was eating and playing as normal.

52.    LORA, suspecting a possible urinary tract infection, even asked S.L. if her genitals hurt, itched, or bothered her, and S.L. indicated that they did not. Indeed, S.L. was ultimately diagnosed with a urinary tract infection that spread to become a systemic illness. COUNTY's second expert later explained that "many pediatric interns cannot discern the difference between a child with flu and a fever … and a child with a life-threatening systemic illness…" and "90% of children with high fevers have a viral illness that will resolve spontaneously."

53.    On August 21 through 23, she again had a low fever but no other symptoms.

54.    From August 24-26, S.L. did not have a fever but she looked fatigued, though she was still eating.

55.    By the morning of August 26, Plaintiffs realized S.L. was just not getting better even though she showed signs of improvement, such as responding to the Tylenol.

**August 26, 2019**

56.    On August 26, 2019, Plaintiffs took S.L. to the pediatrician, who recommended they go to the Emergency Room. They immediately did, going to Regional Medical Center in San Jose.

57.    Somebody at Regional Medical Center called the DFCS hotline to report S.L.'s illness. The hotline categorized the referral as a 10-day response – the lease urgent category available in their system.

58.    S.L. was promptly transferred to Lucille Packard Children's Hospital ("LPCH") in Palo Alto. Plaintiffs followed, and from that point forward stayed with S.L. in the hospital nearly 24 hours per day, seven days per week.

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.
12

**September 4, 2019**

59. On Wednesday, September 4, 2019, RUIZ called Plaintiffs, telling them that he had received a referral and needed to check on S.L. Plaintiffs told RUIZ that they were not home, but that he could come to LPCH the following morning.

**September 5, 2019**

60. On Thursday, September 5, 2019, exactly 10 days after the initial referral was made, RUIZ went to LPCH to investigate the referral.

61. RUIZ spoke with Plaintiffs and hospital personnel, including a hospital social worker.

62. The hospital social worker conveyed to RUIZ that Plaintiffs had completely cooperated with LPCH staff.

63. Plaintiffs provided RUIZ with consent to speak to LPCH staff, which RUIZ did, confirming Plaintiffs' cooperation with staff.

64. Shortly thereafter, RUIZ left, telling Plaintiffs that they would never see him again.

65. As he was leaving, RUIZ told Plaintiffs to take S.L. to the doctor sooner, should she become ill again in the future, and Plaintiffs agreed to do so.

66. Later that same day, RUIZ called to tell Plaintiffs that, after consulting with his supervisor (believed to be KELLY) and their own consultant, Catherine Albin, that three additional tests would be required: an MRI, blood tests, and a full skeletal survey.

67. Plaintiffs informed RUIZ that the MRI and blood tests had already be done.

68. Satisfied with that answer, RUIZ then asked whether Plaintiffs would consent to the skeletal survey.

69. Plaintiffs asked RUIZ for time to consult with LPCH staff. RUIZ gave them ten minutes.

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

70.    RUIZ called back. Plaintiffs asked RUIZ why a skeletal survey was necessary, given that the child's treating physicians had indicated that it was not medically necessary, or even recommended.

71.    RUIZ indicated that because of S.L.'s low weight, she was at risk for "other forms of abuse," and that the skeletal survey was necessary to rule out those other forms of abuse. RUIZ offered no explanation of what "other forms of abuse" meant. RUIZ, perhaps unknowingly, by his choice of words revealed that the skeletal survey was investigatory in nature, rather than medically indicated. Pursuant to COUNTY policy, practice, procedure and custom, RUIZ was operating on Albin's orders to conduct a fishing expedition.

72.    Plaintiffs again questioned why RUIZ was asking for the skeletal survey when LPCH staff had indicated it was not necessary.

73.    Rather than actually respond to the question, RUIZ threatened Plaintiffs that, though he knew Plaintiffs were not actually refusing consent, that he would tell the juvenile court that they had. And that's just what he did.

**September 6, 2019, Removal of S.L.**

74.    On Friday, September 6, 2019, RUIZ returned to LPCH.

75.    RUIZ served Plaintiffs with a warrant to remove S.L. from Plaintiffs' "home" shortly after noon on September 6. Though the warrant and related documents did not so specify, RUIZ instructed Plaintiffs to leave the hospital immediately, that neither Plaintiffs nor any family could stay with S.L., that neither Plaintiffs nor any family could even call the hospital for updates.

76.    At this point, Plaintiffs had been in the hospital nearly 24 hours per day for 11 days. FRANCISCO had taken leave and/or worked remotely from S.L.'s bedside throughout this

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

14

time.

77.   Plaintiffs left the hospital, leaving a terrified S.L. behind.

78.   No explanation was given for why Plaintiffs had to leave, if all that was at issue was the skeletal survey. No explanation was given for why Plaintiffs could not remain in the hospital, to comfort their daughter during the *minutes* that a skeletal survey would take.

79.   Plaintiffs tried to call LPCH for updates on their daughter, and they were told that they could not even receive updates, per RUIZ. No explanation was given by Defendants why the disagreement about the skeletal survey meant that they could not receive updates from hospital staff, including the results of the skeletal survey.

80.   The skeletal survey was completed within a few hours on September 6, 2019, and the results were negative/clean. Yet Defendants did not allow Plaintiffs to return to the hospital. Nor did they even share the good, albeit absolutely unsurprising, news with Plaintiffs.

**The Warrant Application and Warrant**

81.   RUIZ, along with KELLY, submitted a Warrant Application and a Petition (the "September 6th Petition").

82.   The Warrant Application and September 6th Petition were so replete with lies, misrepresentations, half-truths, and omissions of exculpatory information that, but for same, the Warrant Application would have been denied.

83.   Some of the details of the fraud upon the juvenile court in the Warrant Application included, but are not limited to:

   a.   There is reasonable cause to believe that the circumstances of the child's home environment may endanger the child's health, person or welfare.

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

15

b.  The child requires immediate medical care and there are no reasonable means by which the child can be protected without temporary removal from the physical custody of the parents or guardians.

c.  The child's physical environment poses an imminent threat to the child's health or safety and there are no reasonable means by which the child can be protected without temporary removal from the physical custody of the parents or guardians.

d.  On 9/5/19 Child Abuse Expert Dr. Catherine (*sic*) Albin … medically recommended that a Full Skeletal Survey, blood work, and an MRI be conducted to rule out any other medical concerns.

e.  The parents were twice advised of the medical recommendations made by Dr. Albin and both times the parents declined to give consent but wanted it noted they were not refusing to give consent.

f.  The parents… are not willing to follow the medical advice by Dr. Albin

84.    Again, the warrant authorized Defendants to remove S.L. from Plaintiffs' "home" shortly after noon on September 6. The warrant did *not* authorize the skeletal survey, or any medical assessment or treatment. Nor did the warrant authorize Defendants to prevent Plaintiffs from receiving updates about S.L.

**The September 6th Petition**

85.    Some of the details of the fraud upon the juvenile court in the September 6th Petition, submitted with the Warrant Application included, but are not limited to:

a.  Due to the child's medical condition she still cannot walk or eat…

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

16

b. The parents are refusing recommended medical assessment procedures to determine whether the child has other medical problems which are contributing to her current serious illness…

c. The parents' inability or unwillingness to prioritize their child's health and safety places the child at risk of further physical harm in the parents' care.

86. At no point did the Warrant Application, including the September 6, 2019 Petition, or any Defendant verbally inform the juvenile court judge who signed the warrant that the child's "physical environment" was, in fact, the hospital. The highly-respected, specialized Lucille Packard Children's Hospital, no less.

87. At no point did the Warrant Application, including the September 6, 2019 Petition, or any Defendant verbally inform the juvenile court judge who signed the warrant that S.L. was currently admitted at LPCH, had been for 11 days as of the submission of the Warrant Application, or that Plaintiffs had consented to *every single thing* LPCH staff had recommended during the child's stay at LPCH.

88. At no point did the Warrant Application, including the September 6, 2019 Petition, or any Defendant verbally inform the juvenile court that Albin had not spoken to the parents, had not been to LCPH, had not spoken to anybody from LPCH, had not seen the child, had not seen the child's chart, or even seen a picture of the child.

89. At no point did the Warrant Application, including the September 6, 2019 Petition, or any Defendant verbally inform the juvenile court that Albin in fact works at a different hospital, in a different city, or that she is a long-time consultant for CPS.

90. At no point did the Warrant Application, including the September 6, 2019 Petition, or any Defendant verbally inform the juvenile court that in fact parents had already consented to the

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

17

MRI and bloodwork, or that they had already been performed and revealed no evidence of child abuse.

91.    At no point did the Warrant Application, including the September 6, 2019 Petition, or any Defendant verbally inform the juvenile court that in fact Plaintiffs had been in the hospital virtually 24 hours per day for 11 days, or that FRANCISCO had taken leave and/or worked remotely from S.L.'s bedside throughout this time. Instead, they alleged that Plaintiffs were unable or unwilling to "prioritize their child's needs."

92.    At no point did the Warrant Application, including the September 6, 2019 Petition, or any Defendant verbally inform the juvenile court that, in fact, parents did not refuse the skeletal survey. In reality, the parents asked RUIZ why a skeletal survey was necessary, given that the child's treating physicians had already indicated that it was not medically necessary.

93.    Again, just as he threatened, and although RUIZ knew the adult Plaintiffs were asking a question rather than actually refusing consent, but nevertheless told the juvenile court that they had in fact refused consent.

94.    At no point did any Defendant communicate to the juvenile court that the skeletal survey had already been done, much less that it came back completely negative / clean, or that it had been performed within a few hours of the removal. Instead, all Defendants, allowed the juvenile court to remain under the impression that the adult Plaintiffs were still refusing medical assessments (plural) and/or treatment for S.L.

95.    At no point did the Warrant Application, including the September 6, 2019 Petition, or any Defendant verbally, inform the juvenile court that S.L. was already eating food, walking, and recovering well.

//

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

18

**September 6, 2019, Warrant and Removal**

96.    Santa Clara County Superior Court Judge Schwarz, completely unaware of the lies, misrepresentations, and omissions in the warrant application, and in complete reliance on Defendants' deceptive written submissions, signed the Warrant on September 6, 2019.

97.    The Warrant authorized the removal of the child from her "home." It did NOT authorize any medical procedures, assessments, or treatments. Indeed, Defendants did not even request such authorization.

98.    As set forth hereinabove, RUIZ then removed S.L. from Plaintiffs' care, ordering them to leave LPCH immediately.

99.    RUIZ indicated that, pursuant to COUNTY policy, practice, procedure, and custom, "we make decisions based on the recommendations of [Albin]", rather than on the medical professionals who were actually treating S.L.

100.   Plaintiffs left, traumatized and confused as to how this could happen, how CPS could remove their children and expel them from the hospital for asking a question.

101.   RUIZ explained that the removal was necessary to "modify [Plaintiffs'] behaviors."

102.   S.L. was traumatized. RUIZ knew it would happen, and took no steps to minimize the trauma to the child.

103.   RUIZ told hospital that Plaintiffs could not visit S.L., nor could they even call LPCH to ask for status updates for their daughter.

104.   No explanation was given to Plaintiffs, or the juvenile court, about why the skeletal survey could not have been performed in Plaintiffs' presence, which would have allowed them to comfort their daughter during the *minutes* that such a procedure would take.

105.   Plaintiffs tried to call anyway, and were told by hospital staff that they could not

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

provide any information to Plaintiffs, per RUIZ' orders.

106.  The skeletal survey was performed within hours, based only on the uninformed, baseless recommendation of DEFENDANTS and Albin. It was negative / clean.

**September 9, 2019, Plaintiffs return to LPCH**

107.  Standard operating procedure in COUNTY is for the initial worker to keep the case at least through the first hearing. However, in this case, Defendants deviated from that procedure.

108.  On Monday, September 9th, REYNA was assigned and spoke to the adult Plaintiffs. He informed them that they could return to the hospital, but that they would be monitored, could not close the door or the curtain in their room, or have any privacy at all.

109.  Plaintiffs immediately returned to LPCH to be with their daughter S.L.

110.  REYNA finally informed Plaintiffs that the skeletal survey was totally negative/clean. This was the first Plaintiffs had heard, although the skeletal survey had been performed around 6:00p.m. on September 6th.

111.  REYNA informed Plaintiffs that although they could now be with S.L. in the hospital, CPS would still be pursuing a case.

112.  REYNA additionally warned Plaintiffs that the first court report would be ugly, but the case would probably be closed in about two weeks after he completed paperwork.

113.  In other words, REYNA knew that the existing narrative was false, but as per COUNTY policy, practice, procedure and/or custom, he nevertheless intended to cut-and-paste it into his own initial submissions to the juvenile court. And that's just what he did.

**September 10, 2019, Petition and Initial Hearing Report Filed**

114.  On Tuesday, September 10, 2019, the September 10th Petition and Initial Hearing

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

20

Reports were filed. They were signed by REYNA and/or JARVIS.

115.   It must be noted that two separate Petitions were filed, the first on September 6, 2019 and the second on September 10, 2019. The latter is referred to, on its face, as the "Original Dependency Petition" despite coming later in time. To avoid confusion, the former shall be referred to herein as the "September 6th Petition," and the latter the "September 10th Petition."

116.   The two petitions were virtually identical, except the September 10th Petition was revised only insofar as to state that the Warrant had been signed by Judge Schwarz. All of the allegations remained completely unchanged. Indeed, the wording of the entire document remained unchanged, except for the notation that the Warrant had been granted by Judge Schwarz. This, despite all Defendants knowing that the allegations were false, despite knowing that all three of Albin's recommended tests had already been done, despite knowing that all three tests, including the skeletal survey, had come back negative/clean.

**September 11, 2019, Initial Hearing Gets Continued**

117.   On Wednesday, September 11, 2019, the Juvenile Court held the Initial Hearing. An Initial or Detention Hearing is similar to an arraignment, where charges are read, and pleas are entered.

118.   At the Initial Hearing, attorneys were appointed for all parties, except FRANCISCO who wanted to find private counsel, and the matter was continued one day, to September 12, 2019.

**September 12, 2019, Initial Hearing Held**

119.   Based on their training, and in keeping with COUNTY policy, practice, procedure and custom, Defendants know of the court's reliance, and knowingly, willfully abuse it on a daily basis. It happened in the dependency case of Plaintiffs.

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.
21

120.   Prior to hearing arguments, the assigned judge (Judge Chung), told FRANCISCO to bring a particular administrative form "before the next hearing." In so doing, the judge demonstrated just how pre-determined the outcomes are at Detention Hearings: If CPS asks for it, they get it.

121.   The judge's explanation demonstrated just how much the juvenile court relies upon CPS in general, and these Defendants in this particular case, in making its decisions.

122.   Thereafter, FRANCISCO's attorney requested dismissal, pointing out Albin's lack of any information on which to form any opinion. In response, the judge took the time to explain to Plaintiffs that the standard at a Detention Hearing is *prima facie*, meaning that his decision was not based on the truth of the allegations. The next hearing, Jurisdiction, was set for October 1, 2019; Court and CPS involvement in Plaintiffs' lives would continue.

123.   The Jurisdiction Hearing in juvenile court is where evidence and argument are presented and the juvenile court decides whether the allegations in the operative Petition are true.

124.   In practice, however, the first "Jurisdiction Hearing" date is actually for receipt of report and trial setting. In fact, that's what happened here.

**September 13, 2019**

125.   On Friday, September 13, 2019, a "Child and Family Team" meeting (hereinafter, "CFT") was held to discuss where to place S.L. upon discharge from LPCH.

126.   Those present for the meeting included Plaintiffs, RUIZ, a facilitator, CPS' new "child abuse expert" and participating telephonically was S.L.'s attending physician at LPCH.

127.   Plaintiffs are informed and believe, and on that basis allege, that COUNTY personnel asked the second expert to replace Albin once COUNTY personnel realized Albin's baseless

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

recommendations and complete lack of foundation were not going to stand up to cross-examination at trial. Indeed, she had contributed to Defendants' plan to cause the unconstitutional, traumatic removal of S.L. from her parents illegally, and exposed to X-ray radiation needlessly.

128. At the conclusion of the CFT, CPS/Defendants decided that S.L. would be placed with her parents, but CPS and juvenile court oversight would continue.

129. LPCH personnel indicated that S.L. was ready for discharge.

130. After the CFT, adult Plaintiffs immediately drove from the CPS office in San Jose to LPCH in Palo Alto. S.L. was discharged, and went home with her parents.

**October 1, 2019, Jurisdiction Hearing**

131. On Wednesday, October 1, 2019, Defendants submitted a Memorandum requesting a continuance of the Jurisdiction Hearing because REYNA had not had time to complete his report.

132. In reality, Defendants had all the information they needed. All tests were clean, and they knew it. Plaintiffs had followed all medical advice from the outset, and they knew it. S.L. was recovering well, and they knew it. RUIZ had lied, and they knew it. REYNA had cut-and-pasted RUIZ' lies, and they knew it. Nevertheless, the hearing was continued until October 29, 2019.

133. The Memorandum was the first time Defendants admitted that they had known since September 10, at the latest, that S.L.'s attending pediatrician was against the skeletal survey, though Plaintiffs allege that Defendants had known since September 5, 2019.

**October 3, 2019**

134. On October 3, 2019, REYNA called Plaintiffs to inform them he would be filing to

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.
23

dismiss the Petition. He did not actually do so for over three weeks.

**October 29, 2019**

135.   REYNA submitted his Jurisdiction Report shortly before the October 29, 2019, Jurisdiction hearing. He recommended dismissal without prejudice.

136.   Shortly after Albin was called out by FRANCISCO's attorney, she was replaced by another expert who, unlike Albin, had actually seen S.L.'s file, seen S.L., spoken to Plaintiffs, spoken to LPCH staff, etc. In her report, which was submitted with the Jurisdiction Report, COUNTY's second expert noted that "many pediatric interns cannot discern the difference between a child with flu and a fever … and a child with a life-threatening systemic illness…" and "90% of children with high fevers have a viral illness that will resolve spontaneously."

137.   Plaintiffs attended the October 29, 2019 hearing on Jurisdiction, which had been continued. At the hearing, the case was dismissed.

### DAMAGES

138.   As a result of the conduct of Defendants, Plaintiffs suffered severe emotional distress, anxiety and damage to their psyche, to such an extent as to cause physical manifestations of pain and symptoms of nausea and severe depression, including but not limited to sleeplessness, headaches, fatigue, malaise, irritability, inability to focus, loss of appetite, and loss of weight.  Plaintiffs developed an abiding fear and distrust of authority figures and particularly social workers.

139.   The incident of the removal also caused humiliation and embarrassment and loss of reputation in the community to Plaintiffs FRANCISCO and LORA, caused the incursion of medical fees, therapy fees, attorney's fees, and expenses related thereto, and is likely to cause

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

24

the incursion of further medical, therapy, and/or counseling fees in the future as well as expenses related thereto.

140.  Plaintiffs seek an award of exemplary (punitive) damages pursuant to California Civil Code §3294, and any state or federal laws authorizing the award of punitive damages, to make an example of and punish the individual Defendants, and in the hope of deterring future conduct of a similar nature.

**V.**

**CAUSES OF ACTION**

**FIRST CLAIM FOR RELIEF**

VIOLATION OF 1ST, 4TH AND/OR 14TH AMENDMENT

SEIZURE OF S.L., VIOLATION OF FAMILIAL ASSOCIATION RIGHTS BY WAY OF

JUDICIAL DECEPTION – REMOVAL, WARRANT

ALL PLAINTIFFS AGAINST KELLY, RUIZ, KING, COUNTY, DOES 1-10

141.  Plaintiffs incorporate paragraphs 1 through 137  as though fully set forth herein, and allege as to KELLY, RUIZ, KING, COUNTY, and Does 1-10, that the repeated use of lies, fabricated evidence, misrepresentation of facts, and exclusion of exculpatory and/or explanatory information in presentations of documents to the juvenile dependency court, constituted an unlawful violation rights against seizure of S.L. and of substantive and procedural due process rights, including but not limited to privacy rights under the 1st Amendment, familial association rights under 4th and/or 14th Amendment, and the right to be free from juvenile dependency proceedings imbued with lies, fabricated evidence, misrepresentation of facts, and exclusion of exculpatory and/or explanatory information in

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

25

presentations of documents to the Court, as well as the withholding of evidence from parties and/or their counsel.

142.  Plaintiffs incorporate herein, the damage allegations of paragraphs 138 through 140, in relation to this CLAIM FOR RELIEF.

**SECOND CLAIM FOR RELIEF**

CONTINUED DETENTION – 4TH / 14TH AMENDMENT VIOLATION

PLAINTIFFS AGAINST KELLY, RUIZ, KING, REYNA, JARVIS, COUNTY, DOES 1-10

143.  Plaintiffs incorporate paragraphs 1 through 137  as though fully set forth herein, and allege as against KELLY, RUIZ, COUNTY and Does 1-10, that the actions and failures to act of said Defendants constituted an unlawful violation of their 4th and/or 14th Amendment rights to be free from unreasonable seizure and/or unlawful interference with familial association rights, where Plaintiffs' claims are related to the original removal of the Minor Plaintiffs from Plaintiff – as to RUIZ and KELLY by use of a Warrant Application containing false and misrepresented statements of fact and a warrant and obtained using false statements, misrepresentations of fact, and excluding exculpatory information, and continued detention by the use of the same tactics in REYNA and JARVIS' Initial Hearing and/or Detention Reports, and as to all four individually-named Defendants, the violation of substantive and/or procedural due process rights in the context of using lies, fabricated evidence, misrepresentation of facts, and the exclusion of exculpatory and/or explanatory

144.  information, in order to obtain continued juvenile court and CPS involvement in Plaintiffs' lives (KELLY, RUIZ, REYNA, JARVIS).

145.  Plaintiffs incorporate herein, the damage allegations of paragraphs 138 through 140, in relation to this CLAIM FOR RELIEF.

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

26

## THIRD CLAIM FOR RELIEF

UNLAWFUL MEDICAL EXAMINATION 4TH/14TH AMENDMENT – SKELETAL SURVEY

PLAINTIFFS AGAINST KELLY, RUIZ, KING, REYNA, JARVIS, COUNTY, DOES 1-10

146.  Plaintiffs incorporate paragraphs 1 through 137 as though fully set forth herein, and allege as to KELLY, RUIZ, KING, REYNA, JARVIS, COUNTY and Does 1-10, that the skeletal survey constituted an unlawful violation of Plaintiffs' rights under 1st, 4th and/or 14th Amendment.

147.  This CLAIM FOR RELIEF is separate and distinct from Plaintiffs claims related to the removal and continued detention of S.L., and is specifically related to the skeletal survey and any other medical examinations, treatments, or procedures performed on S.L., as well as the exclusion of FRANCISCO and LOPEZ from being present with S.L. during such procedures.

148.  Moreover, the fraudulently obtained Warrant itself did not authorize any examination, treatment or procedures.

149.  Plaintiffs incorporate herein, the damage allegations of paragraphs 138 through 140, in relation to this CLAIM FOR RELIEF.

## FOURTH CLAIM FOR RELIEF

### MONELL #1

PLAINTIFFS Against COUNTY – Judicial Deception

150.  Plaintiffs FRANCISCO, LORA, and S.L. incorporate the above allegations of fact and law as though fully set forth herein.

151.  Defendant COUNTY, including through its CPS department, is a "person" within the meaning of 42 U.S.C. § 1983 and subject to *Monell* liability. *Monell v. Dept. of Social*

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.
27

*Services* (1978) 436 U.S. 658. Defendants, and each of them, acted under color of state law when committing the acts alleged herein, in violation of FRANCISCO, LORA and S.L.'s rights.

152.   Defendant COUNTY, including through its entity CPS, and those individuals in their official capacity who had supervisory and/or policy making authority, had a duty to Plaintiffs to establish, implement and follow policies, procedures, customs and/or practices which confirm and provide the protections guaranteed Plaintiff under the United States Constitution, including those under the First, Fourth and Fourteenth Amendments. These include, without limitation, the protection of the rights to familial relations; the right against unlawful seizure; the right to privacy; and the rights to substantive and procedural due process.

153.   Defendant COUNTY also had a duty to use reasonable care to select, assign, supervise, train, control and review the activities of all their agents, social workers, employees and those acting under them, including within CPS, so as to protect these constitutional rights; and to refrain from acting with deliberate indifference to the constitutional rights of Plaintiffs in order to avoid causing the injuries and damages alleged herein.

154.   Moreover, based on the duties charged to COUNTY, CPS and its social workers, including the powers to seize children from their parents' care, the COUNTY and its policymaking officials knew or should have known of the need to establish customs, policies, and practices required to protect the aforementioned civil rights of parents and their children with whom their agents regularly came into contact – and to adequately train its employees on constitutionally appropriate policies and practices.

155.   Defendant COUNTY established, adopted, followed, and/or implemented and/or turned a blind eye to customs, and/or practices which were followed, complied with, and carried out

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

28

by COUNTY CPS and its employees social workers when they violated Plaintiffs' constitutional rights by seizing S.L. from Plaintiffs' care and custody by use of a warrant obtained through judicial deception.

156.   In addition, Defendant COUNTY established, adopted, followed, and/or implemented and/or turned a blind eye to customs, and/or practices which were followed, complied with, and carried out by CPS and its social workers when they violated Plaintiffs' constitutional rights by continuing to detain S.L. and and/or by causing S.L. to continue to be detained from Plaintiffs' custody when it was known that there was no basis to do so, by means of judicial deception.

157.   At the time of the underlying events, the regularly established customs and practices of COUNTY and CPS that were followed, adhered to, complied with, and carried out by KELLY, RUIZ, KING, REYNA, JARVIS, and Does 1-10, and each of them, were the moving force, that is, the actual, direct, and proximate cause of the violations of Plaintiffs' constitutional rights including, but not limited to:

- The custom and/or practice of detaining and/or removing children from the custody of their parents by use of a warrant obtained by judicial deception;

- The policy, custom, and/or practice of removing children from their family and their homes without first performing and/or pursuing reasonable investigation, and then only investigating allegations of abuse, after the seizure;

- The policy, custom, and/or practice of removing and detaining children, and continuing to detain them for an unreasonable period long after any alleged basis for detention is negated or otherwise known to lack merit;

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.
29

- The policy, custom, and/or practice of causing the continued detention of a child to be prolonged even though there is no factual basis to support the continued detention of the child;

- The practice of turning a deliberate blind eye to the need for further or adequate training by ignoring repeated violations of the rights of children and parents with whom COUNTY CPS employees can regularly be expected to come into contact by failing and/or refusing to implement a practice of regular and adequate training and/or supervision, and/or failing to train and/or supervise its social workers, supervisors, agents, employees and state actors, in providing and ensuring compliance with the constitutional protections guaranteed to individuals, including those under the First, Fourth and Fourteenth Amendments to the United States Constitution.

158.  Each of the above enumerated customs, policies, or practices is evidenced by the consistent failure on the part of COUNTY to investigate violations of constitutional rights by social workers of a similar nature; and, the consistent failure by CPS to discipline its social workers and their supervisors who are involved in constitutional violations of a similar nature so that violations of citizen's constitutional rights have not only become accepted, but are customary.

159.  On information and belief, COUNTY has engaged in each of the customs and/or practices identified above on an ongoing and continuous basis since at least August 2002, if not earlier, and continues to engage in these practices on an ongoing and daily basis.

160.  The Defendant COUNTY is aware that its social workers seize children from the care of their parents by obtaining warrants through judicial deception, and/or without pursuing

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

reasonable avenues of investigation, when there is no emergency or exigent circumstance and in contravention of the rights of both parents and children. Yet Defendant COUNTY made a knowing and conscious decision to refrain from promulgating a policy and recurrent training to prevent such misconduct, and has consistently and knowingly failed to provide any training to their social workers to inform them of the rights of parents and children to remain together and free of undue government interference, the obligation of social workers to seek a warrant without resorting to judicial deception, or to limit the scope and/or duration of detention of children.

161.   Defendant COUNTY failed to establish, adopt, and/or implement policies, procedures, and training regarding the constitutional protections afforded to a parent and child by the First, Fourth and Fourteenth Amendments. Without such policies, procedures, customs and/or practices in place, COUNTY social workers are allowed and permitted to engage in conduct that was in violation of Plaintiffs' constitutional rights as more specifically set out in the General Allegations above.

162.   On information and belief, the Defendant COUNTY's failure to adopt such policies and training was the moving force behind the violations of Plaintiffs' constitutional rights. Such failures include, but are not limited to:

163.   The state of the law regarding the constitutional protections afforded to a parent and child by the First, Fourth and Fourteenth Amendments was clearly established well before September 2019. As such, the Defendant COUNTY knew before 2019 that its social workers required recurrent training on the constitutional protections afforded to a parent and child. On information and belief, despite this knowledge, the Defendant COUNTY deliberately failed to

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

train or, alternatively, deliberately failed to provide recurrent and updated training to its social workers on the following constitutional protections:

- The COUNTY did not provide recurrent training to its social workers regarding the constitutional mandates that they report truthfully, accurately, and thoroughly to the juvenile court, including exculpatory or explanatory information that might weigh against the social worker's recommendations;

- The COUNTY did not provide recurrent training to its social workers regarding limiting the scope and duration of their interference with the constitutional rights of parents and children;

164. The Defendant COUNTY's deliberate failure to train its social workers on these established constitutional protections was a substantial factor in causing the Plaintiff's harm, in that officers working for the Defendant COUNTY were unfamiliar with and oblivious to the Plaintiffs' constitutional rights, when the COUNTY'S employee co-defendant social workers seized S.L. pursuant to a warrant procured via judicial deception.

165. The Defendant COUNTY's decision to disregard these constitutional protections in the face of a known need for such policies to prevent the specific misconduct alleged herein above, i.e., the known need for a specific policy prohibiting the aforementioned misconduct, is itself a "policy" decision which constitutes a policy of deliberate indifference.

166. This policy of deliberate indifference, and the lack of policies and training in the face of a known need for such policies and training was a substantial factor in causing the Plaintiffs harm, in that the COUNTY/CPS and its social workers followed and acted pursuant to the regularly established customs, practices, and well known and accepted standard operating

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

32

procedures of the CPS when they seized S.L. from her parents' custody and care with the warrant obtained by use of judicial deception.

167.  Plaintiffs are informed and believe that, the COUNTY never investigates, reprimands, disciplines, and/or discharges its social workers who engage in the type of conduct alleged herein. Plaintiffs are informed and believe that, the COUNTY has refused and continues to refuse to admit that its social workers commit a constitutional violation when they engage in the type of conduct alleged herein.

168.  These actions, and/or inactions, of COUNTY were the moving force behind, and direct and proximate cause of Plaintiffs' injuries, as alleged herein; and as a result, Plaintiffs have sustained general and special damages, to an extent and in an amount to be proven at trial. In addition, Plaintiffs have incurred, and will continue to incur, attorneys' fees, costs and expenses, including those as authorized by 42 U.S.C. § 1988, to an extent and in an amount subject to proof at trial.

**FIFTH CLAIM FOR RELIEF**

**MONELL #2**

PLAINTIFFS Against COUNTY – Medical Examinations

169.  Defendants, and each of them, had, and have, an affirmative duty and obligation to recognize, acknowledge, and respect the constitutional rights of Plaintiffs, and to conduct themselves in a manner that confirms, provides for the preservation of, and does not violate their rights. These rights include, without limitation, the right to privacy, family integrity and the right to remain free of non-consensual unwarranted forensic medical examinations all arising under the First, Fourth and/or Fourteenth Amendments to the United States Constitution.

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

170.  Moreover, Defendants' employees and/or agents who, in their official capacity had supervisory and/or policy making authority, shared duties identical to those of their respective employers.

171.  Defendants regularly and systematically cause medical providers to perform non-consensual, unwarranted, invasive forensic medical examinations at the behest and direction of contracted consultants such as Dr. Albin.

172.  The Defendants, and each of them, also had a duty to use reasonable care to select, assign, supervise, train, control and review the activities of all its agents, officers, employees and those acting under them, so as to protect the constitutional rights of Plaintiffs and to refrain from acting with deliberate indifference to the constitutional rights of Plaintiffs in order to avoid causing the injuries and damages alleged herein.

173.  Based on the duties charged to the Defendants, and each of them, their policymaking officials knew or should have known of the need to establish such customs, policies, and practices as were required to protect the aforementioned constitutional rights of parents and children with whom the Defendants and their employees and/or agents regularly came into contact.

174.  At the time of the underlying events, the regularly established customs and practices of the Defendants, and each of them, that were followed, adhered to, complied with, and carried out by their employees, agents, and contractors, were the moving force that caused the violations of the constitutional rights of Plaintiffs including, but not limited to the following policies, practices, procedures, and/or customs:

- The policy, practice, procedure and/or custom of subjecting children to unwarranted non-consensual forensic medical examinations.

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

34

- The policy, practice, procedure and/or custom to exclude a parent from the examination room during the forensic medical examination.

- The policy, practice, procedure and/or custom to bar a parent from being in close proximity to the examination room during the forensic medical examination.

- The policy, practice, procedure and/or custom of never conducting an independent investigation and/or inquiry to determine whether or not there is a basis for performing an unwarranted and non-consensual forensic investigatory medical examination on a child.

- The policy, practice, procedure and/or custom of foregoing any consultation with a child's treating physician and/or medical staff to determine whether a child's forensic medical examination is appropriate and/or necessary.

- The policy, practice, procedure and/or custom of acting with deliberate indifference to the rights of children and parents with whom Defendants agents can regularly be expected to come into contact by failing and/or refusing to implement a practice of regular and adequate training and/or supervision, and/or by failing to train and/or supervise their respective officers, contractors, agents, and/or employees, in providing and ensuring compliance with the constitutional protections guaranteed to individuals, including those under the First, Fourth, and Fourteenth Amendments, when performing unwarranted and non-consensual medical investigations.

- When the Defendants ordered LPCH staff to perform S.L.'s forensic medical examination they were acting pursuant to and in accordance with COUNTY policy, practice, procedure and custom with regard to conducting such examinations without first obtaining a warrant or consent.

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

175. Defendants, and each of them, know that performing a forensic medical examination without parental consent, court order, and/or exigent circumstances violates a parent's and children's constitutional rights – and they do so regularly.

176. Defendants, and each of them, failed to train their respective employees and/or agents on the constitutional rights of a parent and child, including but not limited to:

- That a child cannot be examined outside the presence of his or her parent(s) - without judicial authorization or parental consent – when there is no specific, reasonable, and articulable evidence that the child is in immediate risk of suffering serious bodily injury if the examination is not performed.

- That a child cannot be subjected to a forensic investigatory medical examination – without parental consent, court order, and/or exigent circumstances.

- That an independent investigation and/or inquiry must be performed to determine whether or not there is a basis for performing an unwarranted and non-consensual forensic investigatory medical examination on a child.

- Without adequate training, Defendants, and each of them, were unfamiliar with and oblivious to Plaintiffs' constitutional rights, when they subjected S.L. to a forensic investigatory medical examination – without parental consent, court order, and/or exigency.

177. Defendants' non-consensual unwarranted forensic medical examination of S.L. was not an isolated incident specific to her circumstances. On the contrary, such warrantless non-consensual medical examinations are routine, regular and recurring events, and are perpetrated by Defendants on a daily basis in the same or similar circumstances as alleged herein.

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.
36

178. Defendants have engaged in each of the customs and/or practices identified above on an ongoing and continuous basis. They continue to engage in said practices on an ongoing and daily basis, and will continue to do so until ordered to stop.

179. These actions, and/or inactions, of COUNTY were the moving force behind, and direct and proximate cause of Plaintiffs' injuries, as alleged herein; and as a result, Plaintiffs have sustained general and special damages, to an extent and in an amount to be proven at trial. In addition, Plaintiffs have incurred, and will continue to incur, attorneys' fees, costs and expenses, including those as authorized by 42 U.S.C. § 1988, to an extent and in an amount subject to proof at trial.

## CLAIMS UNDER CALIFORNIA STATE LAW

### SIXTH CLAIM FOR RELIEF

### FALSE IMPRISONMENT

PLAINTIFF S.L. AGAINST KELLY, RUIZ, KING, REYNA, JARVIS,

COUNTY, DOES 1-10

180. Plaintiff S.L. re-alleges and incorporates paragraphs 1 through 137 , inclusive, as though fully set forth at this point, as they relate to a claim for relief for false imprisonment against all Defendants for the inception and furtherance of a conspiracy to violate the rights of Plaintiff by removal of S.L. and judicial deception, all of which were done with intent to cause severe emotional distress, and/or with reckless disregard for the likelihood of causing severe emotional distress, through the continued pursuit of a false and malicious claim of abuse and/or neglect against the adult Plaintiffs, and the juvenile dependency proceeding Defendants continued to prosecute.  All of said actions, were undertaken with the intent to

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.
37

cause and/or with reckless disregard for the likelihood of causing, and so causing false imprisonment of S.L.

181.  Plaintiffs re-allege paragraphs 138 through 140 hereinabove, as said damages relate to a claim for relief for false imprisonment, as stated.

**SEVENTH CLAIM FOR RELIEF**

**Intentional Infliction of Emotional Distress**

PLAINTIFFS AGAINST KELLY, RUIZ, KING, REYNA, JARVIS,

COUNTY, DOES 1-10

182.  Plaintiffs re-allege, adopt, and incorporate as if set forth at length, and to the extent applicable paragraphs 1 through 48.

183.  Defendants KELLY, RUIZ, KING, REYNA, JARVIS, and Does 1-10, and each of them, are individuals who were acting under color of law in their involvement in the acts/omissions complained of herein, including as to proceedings described in Government Code §820.21, and including compliance with California Welfare and Institutions Code.

184.  As a result of the conduct of Defendants KELLY, RUIZ, KING, REYNA, JARVIS, and Does 1-10, as adopted and incorporated by paragraphs previously set forth herein, said Defendants and each of them, violated Plaintiffs' personal and civil rights, including: a. The right of protection from bodily restraint or harm, from personal insult, from defamation and from injury to personal relations as set forth in California Civil Code §43, including by, but not limited to, the use of fabrication of evidence and failure to disclose exculpatory evidence in violation of Government Code §820.21. Pursuant to *Venegas v. County of Los Angeles*, 32 Cal. 4th 820 (2004), Plaintiffs are not required to make a showing of discriminatory intent or show that they are members of a protected classification to exercise these rights.

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

185. Plaintiffs' rights, ensured to them under California Civil Code §52.1 to be free from the violation and interference with the exercise or enjoyment of Plaintiffs' rights secured by the laws and Constitution of the United States, and the Constitution and laws of the State of California, as well as the requirements of Welfare and Institutions Code and the prohibitions of Government Code §820.21 in using the fabrication of evidence and failure to disclose exculpatory evidence in juvenile dependency investigations and proceedings.

186. The acts of KELLY, RUIZ, KING, REYNA, JARVIS, and Does 1-10 that are previously alleged in this Complaint, and incorporated by the references herein to the extent applicable, interfered, or attempted to interfere, with the exercise of Plaintiffs' personal and civil rights under the laws and Constitution of the State of California, including Plaintiffs' rights of privacy and those rights under Civil Code §43, as well as the laws and the Constitution of the United States, as stated herein.

187. As a direct and proximate result of the aforementioned conduct of KELLY, RUIZ, KING, REYNA, JARVIS, and Does 1-10, and each of them, Plaintiffs have suffered and will continue to suffer damages, including but not limited to, great emotional and psychological distress, humiliation and mental anguish, the nature and amount of which will be shown according to proof at trial. Defendant COUNTY is vicariously responsible for the conduct of Defendants KELLY, RUIZ, KING, REYNA, JARVIS, and Does 1-10, including under Government Code §815.2, as well as responsible for its own conduct, or lack thereof, including as to its policies, procedures, practices and/or customs, in causing Plaintiffs' damages.

188. These violations of Plaintiffs' personal and civil rights, including by the COUNTY and Defendants KELLY, RUIZ, KING, REYNA, JARVIS, and Does 1-10, and each of them, are protected and guaranteed by California Civil Code §52.1 entitling Plaintiffs to damages and

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

relief, including damages under California Civil Code §52, other equitable relief, punitive damages, injunctive relief, statutory civil penalties (including $25,000.00 as to each individual Defendant) and attorneys' fees, (pursuant to CC §52.1(h)), all of which are requested herein.

189.  In performing the acts alleged in this Complaint, Defendants KELLY, RUIZ, KING, REYNA, JARVIS, and Does 1-10, and each of them, knew or should have known, that their actions were likely, or would, injure and damage Plaintiffs, and Plaintiffs are informed and believe, and thereon allege, that Defendants KELLY, RUIZ, KING, REYNA, JARVIS, and Does 1-10, and each of them, intended to cause injury and damage to Plaintiffs, and/or acted with a willful and conscious disregard of Plaintiffs' rights, thus entitling Plaintiffs to recover punitive damages as against said Defendants.

## JURY DEMAND

Plaintiffs demand a jury trial as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

- Award Plaintiffs, general and special damages in an amount to be proven at trial, but in no event less than $1,000,000.00;

- As against only the individual Defendants, but not COUNTY, and each of them, punitive damages as allowed by law;

- Award Plaintiffs statutory damages and/or attorney's fees against all Defendants as allowed by 42 U.S.C. §1988, and any other appropriate statute;

- Grant Plaintiffs such further relief as the Court may deem just and proper.

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

Dated: May 20, 2020               By:     The Law Office of Dennis R. Ingols

                                         /S/ DENNIS R. INGOLS
                                         Attorney for Plaintiffs

Complaint
Francisco Lopez, et al., v. County of Santa Clara, et al.
U.S. District Court for the Northern District of California
Case No.

41