```
JAMES R. WILLIAMS, County Counsel (S.B. #271253)
MELISSA R. KINIYALOCTS, Lead Deputy County Counsel (S.B. #215814)
ROBIN M. WALL, Deputy County Counsel (S.B. #235690)
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street, East Wing, Ninth Floor
San José, California 95110-1770
Telephone: (408) 299-5900
Facsimile: (408) 292-7240

Attorneys for Defendants
COUNTY OF SANTA CLARA, ROBERT RUIZ,
EPIFANIO REYNA, ANGEL KELLY, BEVERLY
JARVIS, and RACHEL KING
```

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(San Francisco Division)

| | |
|---|---|
| FRANCISCO LOPEZ, LORA LOPEZ, Individually, and CLARISSA LOPEZ as Guardian Ad Litem for S.L., <br><br> Plaintiffs. <br><br> v. <br><br> COUNTY OF SANTA CLARA, ROBERT RUIZ, EPIFANIO REYNA, ANGEL KELLY, BEVERLY JARVIS, RACHEL KING, and DOES 1-10, <br><br> Defendants. | No. 20-CV-03425-MMC <br><br> [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS <br><br> Date: November 20, 2020 <br> Time: 9:00 a.m. <br> Crtrm.: 7, 19th Floor <br> San Francisco District Courthouse <br> 450 Golden Gate Avenue <br> San Francisco, California <br><br> Judge: Hon. Maxine M. Chesney |

Having considered the Defendants' motion to dismiss, the parties' briefs, and the pleadings and other papers on file in this action, the Court hereby:

GRANTS, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the motion to dismiss (1) Plaintiffs' First through Third Claims for Relief to the extent they are asserted against Defendant County of Santa Clara and (2) Fourth and Fifth Claims for Relief in their entirety.[1]

---

[1] Plaintiffs' claims are: (1) "Violation of 1st, 4th, and/or 14th Amendment Seizure of S.L., Violation of Familial Association Rights by Way of Judicial Deception - Removal, Warrant"; (2) "Continued Detention - 4th/14th Amendment Violation"; (3) "Unlawful Medical Examination 4th/14th Amendment"; (4) "Monell #1 . . . Judicial Deception"; (5) "Monell #2 . . . Medical Examinations"; (6) "False Imprisonment"; and (7) "Intentional Infliction of Emotional Distress."

Plaintiffs' Second Amended Complaint (SAC) fails to state a claim against the County pursuant to *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).[2] In the context of a *Monell* claim, a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (citation omitted); *see also Brown v. County of Mariposa*, No. 18-cv-01541, 2019 WL 1993990, at *9 (E.D. Cal. May 6, 2019) ("Allegations concerning *Monell* liability based on the existence of a policy are subject to the pleading requirements of *Twombly/Iqbal*."). The SAC does not plausibly allege facts supporting Plaintiffs' conclusory allegations that a County policy or practice was the moving force behind the alleged violations of Plaintiffs' rights.[3]

First, Plaintiffs' SAC fails to show any County employee engaged in allegedly wrongful "conduct pursuant to a formal or expressly adopted official policy." *Brown*, 2019 WL 1993990, at *8 (citing *Thomas v. Cnty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014)). Plaintiffs have alleged a formal policy, the "Operational Policies & Procedures Handbook" or "Handbook," which is incorporated by reference in the pleading (*see, e.g.*, SAC at ¶ 146), but the SAC does not allege conduct pursuant to or motivated by that policy, let alone that adoption of such policy constituted deliberate indifference to plaintiffs' constitutional rights.

In particular, with respect to Plaintiffs' judicial deception claims, Plaintiffs allege that the County's child welfare employees were not "thorough, truthful, and accurate" in their submissions to

---

[2] To establish <u>Monell</u> liability, plaintiffs "must show that (1) [they] w[ere] deprived of a constitutional right; (2) the County had a policy; (3) the policy amounted to a deliberate indifference to [their] constitutional right; and (4) the policy was the moving force behind the constitutional violation." <u>See Mabe v. San Bernardino Cnty.</u>, 237 F.3d 1101, 1110-11 (9th Cir. 2001) (internal quotation and citation omitted).

[3] <u>Monell</u>'s policy requirement may be established in three ways: (1) "the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal government policy or a longstanding practice or custom which constitutes the standard operating procedure of the local government entity"; (2) "the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official government policy"; or (3) "the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." <u>See Hopper v. City of Pasco</u>, 241 F.3d 1067, 1083 (9th Cir. 2001) (internal quotations and citations omitted).

the juvenile court (*see, e.g.*, SAC at ¶¶ 22-23), but this alleged conduct would have been a violation of the County policy identified by Plaintiffs, not conduct "pursuant" to that policy. The Handbook directs child welfare employees to "[b]e accurate and fair." (Defs.' Request for Judicial Notice, Ex. B at p. 2.)[4] The Handbook also requires child welfare employees to provide "accurate, factual evidence" and to "back up every allegation with a witness or documentation" in their first submission to the juvenile court—the initial petition on behalf of a child pursuant to Welfare and Institutions Code § 300. (*Id.* at Ex. A at p. 2; Ex. B at p. 2.)[5] Thus, to the extent that the County's child welfare employees were not truthful or accurate in their submissions to the juvenile court, their alleged conduct was in violation of—and not motivated by—County policy, and the SAC does not state a *Monell* claim against the County based thereon.

Next, with respect to Plaintiffs' medical examination claims, Plaintiffs identify one formal policy—the chapter in the Handbook on "Emergency Medical Orders"—but again they do not allege conduct pursuant to that policy. (SAC ¶¶ 164-169.) In fact, Plaintiffs allege that the child welfare workers were required to, but did not, submit a recommendation from a physician as allegedly required by the Handbook. (SAC ¶¶ 165-166.) Again, Plaintiffs have alleged conduct in violation of, not motivated by, County policy, and have therefore failed to state a *Monell* claim.

Further, as to both the judicial deception and medical examination claims, to the extent Plaintiffs also allege the Handbook contains a number of purported errors, the alleged errors are not alleged to have anything to do with the purported constitutional violations in this case. (*See* SAC at ¶¶ 155-156, 163, 173-174, 177.) Accordingly, any such errors could not have been the moving force behind the constitutional violations Plaintiffs assert.

---

[4] The Court GRANTS defendants' unopposed Request for Judicial Notice, whereby defendants seek judicial notice of the complete text of various sections of the Handbook cited in the SAC. See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007) (noting, "a court can consider a document on which the complaint relies if the document is central to the plaintiff's claim, and no party questions the authenticity of the document").

[5] The Court also notes that, contrary to plaintiffs' assertions, County social workers are directed, under the Handbook, to include "any exculpatory evidence" in a warrant application for protective custody. See Handbook, Chapter 13-5 Protective Custody Warrants, https://www.sccgov.org/ssa/opp2/13_xp/13-5.html.

Plaintiffs' SAC likewise fails to show any County employee engaged in allegedly wrongful conduct pursuant to a practice or custom. Liability for an improper custom or practice "may not be predicated on isolated or sporadic incidents," but must be "founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see also Brocato v. Riverside Cnty. Regional Medical*, No. CV 19-1345-SVW, 2019 WL 7285280, at *4 (C.D. Cal. Nov. 12, 2019) (dismissing *Monell* claim, where plaintiff "merely describe[d] inadequate medical care provided to him … on one occasion"). The single incident alleged here does not suffice to "evince a deliberate indifference to [any] constitutional right," and thus does not suffice to establish municipal liability. *See Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 960 (9th Cir. 2010) (internal quotation and citation omitted).[6]

Similarly, Plaintiffs' allegations regarding "the need for further or adequate training" (*see, e.g.*, SAC ¶¶ 156, 159, 173), are generic and conclusory and therefore do not state a claim. *See McFarland v. City of Clovis*, 163 F. Supp. 3d 798, 806 (E.D. Cal. 2016) ("Alleging that training is 'deficient' or 'inadequate' without identifying a specific inadequacy is conclusory and does not support a plausible claim.") (citing *Young v. City of Visalia*, 687 F.Supp.2d 1141, 1149 (E.D. Cal. 2009)); *Bini v. City of Vancouver*, 218 F. Supp. 3d 1196, 1202 (W.D. Wash. 2016) ("Absent allegations of specific shortcomings in the training ... or facts that might place the City on notice that constitutional deprivations were likely to occur, Plaintiff [cannot] adequately [plead] a § 1983 claim … for failure to train."). Moreover, even if plaintiffs' allegations had been sufficient to plead an

---

[6] Plaintiffs argue that a practice or custom may be inferred where the municipality has taken no steps "to reprimand or discharge the offending social workers" or has "otherwise failed to admit that the conduct was in error." (See Opp. at 9:20-23); see also McRorie v. Shimoda, 795 F.2d 780, 784 (9th Cir. 1986). As defendants point out, however, plaintiffs' allegations in that regard are conclusory and, thus, are insufficient to state a claim for relief. (See SAC ¶¶ 198, 207 (alleging "the consistent failure on the part of [County] to investigate violations of constitutional rights by social workers of a similar nature" and County "never investigates, reprimands, disciplines, and/or discharges its social workers who engage in the type of conduct alleged herein")); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not suffice to state claim for relief).

absence of training, the one assertedly mishandled investigation alleged here does not suffice to establish municipal liability, as plaintiffs have not shown "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need." *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).[7]

For these reasons, Plaintiffs have failed to state a *Monell* claim against the County, and the Plaintiffs' First through Third Claims for Relief, to the extent alleged against the County, and Fourth and Fifth Claims for Relief are hereby dismissed.

Because Plaintiffs were given an opportunity to amend their initial complaint, but were unable to address the deficiencies in their constitutional claims against the County, the aforementioned claims are hereby dismissed with prejudice as against the County.

SO ORDERED.

Dated: November 19, 2020

MAXINE M. CHESNEY
United States District Judge

---

[7] Although plaintiffs argue the County's conduct was "ratified by the 'legal team,'" specifically, the County Counsel's Office, thereby "subject[ing] the [County] to Monell liability" (see Opp. at 9:1-7; see also SAC ¶ 104), plaintiffs' conclusory allegations that "County Counsel" and "senior County Counsel staff" are "final, official policymakers" (see SAC ¶ 161), are insufficient to state a claim for relief, see Ashcroft, 556 U.S. at 678; see also City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) (plurality opinion) (holding "only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability"). Moreover, even assuming those attorneys have final policymaking authority, plaintiffs fail to allege they knowingly approved the inclusion of false information in the warrant applications. See Gillette v. Delmore, 979 F.2d 1342, 1348 (9th Cir. 1992) (holding, to establish municipal liability based on policymaker's ratification of subordinate's decision, policymaker must "approve [the] subordinate's decision and the basis for it" (emphasis omitted)).